NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 9, 2008
Decided July 31, 2008

**Before**

RICHARD A. POSNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 07-4089

|  |  |
|---|---|
| | Appeal from the United States |
| UNITED STATES OF AMERICA, | District Court for the |
| *Plantiff-Appellee,* | Western District of Wisconsin. |
| | |
| *v.* | No. 07 CR 114 |
| | |
| MARK BERGMANN, | Barbara B. Crabb, |
| *Defendant-Appellant.* | *Chief Judge.* |

**O R D E R**

Mark Bergmann pleaded guilty to distributing child pornography. *See* 18 U.S.C. § 2252(a)(1). The district court sentenced Bergmann to 480 months' imprisonment, the statutory maximum and default top of the guidelines range. Bergmann argues that the district court abused its discretion in denying a continuance of the sentencing hearing, which Bergmann sought to allow a retained psychologist to evaluate him. Bergmann hoped the results of the examination would favorably influence the sentencing court. He also maintains that the district court erred in failing to address what he considers nonfrivolous sentencing factors. Both contentions are without merit.

**I. Background**

After receiving a tip from an informant that Mark Bergmann was distributing child pornography, police executed a search warrant at Bergmann's home and interviewed him. Bergmann admitted that he sent the image the informant had brought to the attention of the police and also admitted that he had claimed it was an image of his daughter (it was not). He also disclosed that he had sexually assaulted his eldest daughter two or three times when she was three or four years old and that he was convicted of sexually assaulting his four-year-old niece in the early 1990s.

The FBI examined Bergmann's computer equipment, including hard drive, thumb drives, and CDs that were seized in the search of his home. The examiners found 1,371 pictures and 71 videos containing child pornography. Many of the pornographic images and videos were of especially young children, including infants and toddlers. Others were of children between ages 5 and 8, many having violent and sadistic sexual acts performed on them.

A grand jury in the Western District of Wisconsin returned a three-count indictment against Bergmann. Counts 1 and 2 charged Bergmann with distributing child pornography, and count 3 charged that he possessed child pornography. Bergmann struck a plea agreement with the government, and in September 2007 he pleaded guilty to count 2 in return for dismissal of counts 1 and 3. Sentencing was scheduled for December 18, 2007, about 12 weeks after the plea was taken.

The probation officer calculated Bergmann's guidelines range as 360 months to life. This included a base offense level of 22, *see* U.S.S.G. § 2G2.2(a)(2), plus 23 additional points because the material involved prepubescent children, portrayed sadistic conduct, involved a computer, included more than 600 images, and was distributed in return for a thing of value, and because Bergmann had engaged in a pattern of activity involving sexual abuse of a minor. *See* U.S.S.G. § 2G2.2(b)(2), (b)(3)(B), (b)(4), (b)(5), (b)(6), (b)(7)(D). After subtracting three points for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a), the guidelines produced a total offense level of 42, which when indexed with Bergmann's criminal history category of I, yielded a sentencing range of 360 months to life. The statutory maximum punishment under 18 U.S.C. § 2252(a)(1), however, is 480 months for defendants who, like Bergmann, have previously been convicted of an offense relating to sexual assault of a minor. *See* 18 U.S.C. § 2252(b)(1). So 480 months became the top of the guidelines range. *See* U.S.S.G. § 5G1.1(c); *United States v. Krueger*, 415 F.3d 766, 774 (7th Cir. 2005).

On December 12, 2007, less than a week before sentencing was to take place, Bergmann moved to continue sentencing and requested a date at least 30 days after the original sentencing date of December 18, 2007. Bergmann advised the court that although a retained psychologist had been provided with the materials needed to examine him a month earlier, she had been unable to schedule an examination. Bergmann said the psychologist would be able to conduct the examination the following week and would be able to complete her report "shortly after Christmas."

The government objected to rescheduling Bergmann's sentencing because his adult daughter, who he had molested as a child, wanted to attend. The daughter, who was serving in the U.S. Army and stationed in Germany, had received special permission to travel to the hearing and was already en route. Moreover, the government saw the daughter as an "indirect" victim because Bergmann had told the informant that the photo he sent was of his daughter and because Bergmann's sexual assault of this daughter was an important sentencing factor. The government also argued that any new psychological evidence could not be given much weight because Bergmann refused to disclose his prior psychological evaluations and treatment history.

Bergmann explained that the psychologist was hired in late October, but that her schedule did not allow her to interview him in time for the December 18 sentencing. Bergmann urged that the examination would reveal whether he was at risk of recidivism. Bergmann did not, however, make an offer of proof about what the psychologist's findings would be. Indeed, the examination was never performed, and as counsel conceded at oral argument, "to this day" it is not known what the psychologist's findings might have been.

At the conclusion of the hearing, the district court orally reinstated the original December 18, 2007 sentencing date. Bergmann moved for reconsideration, arguing that expert testimony was necessary to determine if he was likely to recidivate. The court denied the motion, noting that it had originally agreed to the continuance under the mistaken belief that the government did not oppose it. The court noted the daughter's interest in attending the hearing and the difficulty inherent in her attendance, and also observed that a psychological evaluation would not be particularly helpful in this case:

> [T]he questions that defendant wants the psychologist to evaluate have been answered: by defendant's own actions and his criminal history. Defendant has two prior convictions for sexual assault of a child and he admitted to a third assault of a two-year-old child for which he was never charged. He was put on probation for both assault convictions and had an opportunity to engage in sex offender treatment, yet despite that treatment, he still remains in thrall to violent and sadistic child pornography.

The district court concluded that given this history, "no prediction by a psychologist would hold much sway, no matter how experienced, qualified or perceptive the psychologist might be. It is not necessary to predict how [the] defendant acts when given the opportunity for probation. His history shows that he commits additional crimes."

At sentencing, Bergmann argued for a sentence below the guidelines range because "we have the civil commitment procedure and Mr. Bergmann would certainly be susceptible to that if federal authorities determine that Mr. Bergmann would be a danger to society," and because a sentence within the guidelines range would create unwarranted disparity. The court sentenced Bergmann to 480 months' imprisonment. The court explained that it believed the maximum sentence was warranted because Bergmann possessed thousands of images of child pornography and distributed those images on the Internet; his prior offenses demonstrated that he could not be monitored effectively; his presence in the community endangered children; and his prior treatment was ineffective. The court did not comment on either of Bergmann's arguments.

## II. Analysis

Bergmann first submits that the district court violated due process when it denied a continuance to allow him to be evaluated by a psychologist. Second, he maintains that the district court did not adequately consider the sentencing factors in 18 U.S.C. § 3553(a).

Bergmann's first contention is without merit. This court reviews a denial of a motion to continue sentencing for abuse of discretion. *United States v. Rinaldi*, 461 F.3d 922, 928 (7th Cir. 2006); *Zambrella v. United States*, 327 F.3d 634, 638 (7th Cir. 2003); *United States v. Robbins*, 197 F.3d 829, 847 (7th Cir. 1999). To demonstrate an abuse of discretion in this context, Bergmann "must show that he was actually prejudiced by the court's refusal to grant the continuance." *Rinaldi*, 461 F.3d at 928-29; *see also Robbins*, 197 F.3d at 847; *United States v. Depoister*, 116 F.3d 292, 295 (7th Cir. 1997). Bergmann cannot make this showing. Because the psychological examination was never performed, there is no evidence on this record to suggest that a continuance would have inured to Bergmann's benefit. Indeed, it is possible that the results of such an examination would have had exactly the opposite effect. Because Bergmann has failed to offer any proof of prejudice, we find no abuse of discretion in the district court's refusal to grant the continuance.

Bergmann also contends that his right to due process was violated because as a result of the denial of the continuance, his sentence was not based upon accurate information. Criminal defendants have a due-process right to be sentenced on the basis of accurate information. *United States v. Tucker*, 404 U.S. 443, 447 (1972); *United States v. Artley*,

489 F.3d 813, 821 (7th Cir. 2007). But Bergmann directs this court to no factual inaccuracies that were before the sentencing court. Indeed, aside from a few issues that were resolved prior to sentencing, Bergmann did not contest the facts contained in the presentence report. The district court was therefore entitled to rely entirely on those uncontested facts. *See United States v. Soto-Piedra*, 525 F.3d 527, 530 (7th Cir. 2008).

Bergmann's real complaint is that the sentencing court lacked relevant testimony about his likelihood of recidivism. But relief is only warranted where the information before the sentencing court was inaccurate, not where it is arguably incomplete. *See United States v. Jones*, 454 F.3d 642, 652 (7th Cir. 2006); *see also United States ex rel. Welch v. Lane*, 738 F.2d 863, 865 (7th Cir. 1984) (noting that under *Tucker* the information must be both "false" and "relied on" in passing sentence). Bergmann directs this court to no authority suggesting that defendants have a due-process right to be sentenced on the basis of complete information—and with good reason. The information before a sentencing court is necessarily a summation. To hold that due-process requires a sentencing court to consider *everything* would both require the impossible and contradict Supreme Court precedent. *See Tucker*, 404 U.S. at 446 (noting the sentencing judge has "largely unlimited" discretion in determining the kind of information to consider and the source from which it may come). Because Bergmann does not suggest that his sentence was the product of any misinformation, his argument that he was denied due process must fail.

Also without merit is Bergmann's contention that the district court did not adequately consider the statutory sentencing factors. Specifically, he maintains that the court did not adequately consider whether the sentence imposed created an unwarranted disparity and that it was greater than necessary to comply with the statutory goals.

Whether the district court followed the correct procedures for imposing sentence under the advisory guidelines regime is a question of law this court reviews de novo. *United States v. Tyra*, 454 F.3d 686, 687 (7th Cir. 2006). The record must confirm that the district court gave meaningful consideration to the statutory factors. *See United States v. Dale*, 498 F.3d 604, 611-12 (7th Cir. 2007); *United States v. Olivas-Ramirez*, 487 F.3d 512, 517 (7th Cir. 2007). But where the sentence falls within the guidelines range, this court generally will infer that the district court did so. *See United States v. Dean*, 414 F.3d 725, 730 (7th Cir. 2005). Although a sentencing court should not completely ignore a relevant consideration or unduly discount a factor that would warrant a sentence outside of the guidelines range, *see United States v. Blue*, 453 F.3d 948, 954 (7th Cir. 2006), neither error occurred here.

Bergmann cites *United States v. Cunningham*, 429 F.3d 673 (7th Cir. 2005), and *Rita v. United States*, 127 S. Ct. 2456 (2007), for the proposition that the sentencing court "must address all non-frivolous arguments made by the defendant in the context of § 3553(a)."

Bergmann reads *Cunningham* too broadly.  This court has explained that the need for a district judge "to explain in detail his consideration of the § 3553(a) factors when choosing to stick with the Guidelines sentence is proportional to the arguments made by the defendants." *United States v. Spano*, 447 F.3d 517, 519 (7th Cir. 2006).  That is, "[w]hen the judge is not presented with much, he need not explain much." *Id.; see also Dean*, 414 F.3d at 729.  As for *Rita*, the Supreme Court expressly noted that where a guidelines sentence is imposed, unless a party contests the appropriateness of *any* sentence within the guidelines range—and no party here did—"the judge normally need say no more." *Rita*, 127 S. Ct. at 2468.

Bergmann's two arguments for a sentence at the low end of the guidelines range were not significant.  First, Bergmann contends that his 480-month sentence was much longer than those given to other defendants similar to himself and thus created an unwarranted disparity under § 3553(a)(6).  Bergmann suggested that between 2005 and 2007 twenty-three sentences for distributing child pornography were upheld on appeal.  Twenty of those sentences were of 240 months or less, and of the three sentences greater than 240 months that were upheld, those defendants were producing child pornography in addition to distributing it and failed to accept responsibility as well.  As the government correctly observes, however, Bergmann's sentence was driven largely by his conviction for sexually assaulting a minor, which increased his statutory maximum to 480 months; otherwise the statutory maximum is 240 months.  *See* 18 U.S.C. § 2252(b)(1).  Bergmann did not reveal to the sentencing court how many—if any—of the cases he cited involved defendants who were exposed to the higher statutory maximum.   Additionally, Bergmann's analysis is not in the record.  He neither provided a list of the cases he relied upon, nor did he discuss whether he considered adjustments other than acceptance of responsibility.  The purported disparity, therefore, was unsubstantiated, and so the district court was not required to comment upon it.

Bergmann also submits that the district court erred in failing to respond to his argument that 480 months was greater than necessary under § 3553(a) because civil-commitment procedures were available to protect the public, should it be necessary, at the conclusion of his prison sentence.  Bergmann does not identify what civil-commitment procedures he believes would be available, but 18 U.S.C. § 4246 authorizes district courts to commit prisoners whose sentences are about to expire if the court finds by clear and convincing evidence that the prisoner "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person."  18 U.S.C. § 4246(d).

There are a number of problems with this line of argument.  First, as a general matter, civil commitment is not punitive, *see Kansas v. Hendricks*, 521 U.S. 346, 361 (1997), so

it seems odd to characterize it as a kind of "sentence" that the court could consider under § 3553(a)(3). Second, there is no evidence in the record that Bergmann has any mental disease or defect. Bergmann has refused to turn over medical-treatment records, and the psychological examination he hoped to complete prior to sentencing was never performed. Assuming Bergmann had such a disease, to suggest that he will be "presently" suffering from it at the conclusion of his sentence is rank speculation. Even if these conditions were satisfied, in order to qualify for civil commitment, Bergmann's release would have to "create a substantial risk of bodily injury to another." This, too, is entirely speculative. In any event, the fact that civil commitment *might* be possible in the future is not a consideration that compels a sentence below the guidelines range.

Both of Bergmann's arguments for a sentence below the guidelines range lacked the necessary factual predicates to make them relevant considerations. The district court, therefore, was entitled to disregard them. And because the sentence imposed was within the guidelines range, we will infer that the § 3553(a) factors were given meaningful consideration. The sentence is presumed reasonable, *see Rita*, 127 S. Ct. at 2468; *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005), and Bergmann has not rebutted that presumption.

                                                                                                    AFFIRMED.